**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4953
Fax (410) 962-2985

March 11, 2015

LETTER TO COUNSEL

RE: *Christina Armani v. Commissioner, Social Security Administration*;
Civil No. JMC-14-976

Dear Counsel:

On March 28, 2014, Plaintiff Christina Armani petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Armani's reply. (ECF Nos. 18, 23, 26). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion and grant the Commissioner's motion. This letter explains my rationale.

Ms. Armani filed her claims for benefits on September 21, 2010, originally alleging a disability onset date of June 15, 2008.[1] (Tr. 211-24). Her claims were denied initially and on reconsideration. (Tr. 135-40, 144-57). A hearing was held on August 14, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 64-98). Following the hearing, the ALJ determined that Ms. Armani was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 32-48). The Appeals Council ("AC") denied Ms. Armani's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Armani suffered from the severe impairments of Turner's syndrome, organic mental disorder, and personality disorder. (Tr. 37). Despite these impairments, the ALJ determined that Ms. Armani retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple instructions, but would be unable to perform work requiring independent planning or goal-setting. She can only perform simple, routine tasks with occasional changes in work setting. She can have no required interaction with the public and occasional required interaction with supervisors and coworkers.

---

[1] Ms. Armani later amended her alleged onset date to January 1, 2011. (Tr. 315).

*Christine Armani v. Commissioner, Social Security Administration*
Civil No. JMC-14-976
March 11, 2015
Page 2

(Tr. 39). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Armani could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 42-43).

Ms. Armani raises three primary arguments on appeal: (1) that new and material evidence requires remand; (2) that SSR 82-59 requires remand; and (3) that the ALJ erroneously considered the limitations found by a State agency psychologist. Each argument lacks merit, and is addressed below.

First, Ms. Armani has submitted two sets of "new evidence" not considered by the ALJ. The first set of records, (Tr. 387-97), was submitted to the AC, but not the ALJ. The AC must review additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is "new" if "it is not duplicative or cumulative." *Id.* at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* "[T]he regulatory scheme does not require the [AC] to do anything more than what it did in this case, i.e., consider new and material evidence ... in deciding whether to grant review." *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (internal quotation marks omitted). The AC is not required to take any specific action in response to new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.* In this case, the record is clear that the AC received and considered Exhibit 9F, which is eleven pages of records from Family and Children's Services of Central Maryland, Inc. dated September 19, 2012 through December 12, 2012. (Tr. 5, 387-97). This evidence is clearly new, because no mental health records were presented to the ALJ, and in part relates to the period on or before the date of the ALJ's decision on October 24, 2012. However, without reweighing the evidence, which I am not permitted to do, I cannot conclude that the records had a reasonable possibility of altering the outcome of the ALJ's proceeding. The evaluating intake therapist, who saw Ms. Armani twice in September, assigned her a GAF of 60, indicating only moderate symptoms, and noted that she "[a]ppears to be of above average intellectual functioning with good attention span although presents as a very quiet anxious young woman who is not spontaneous with her answers and does show social awkwardness." (Tr. 389-90). On September 27, 2012, Ms. Armani was diagnosed with major depressive disorder, and the nature of the disorder was explained to her because she was concerned about the term "major." (Tr. 391). At an appointment on October 4, 2012, Ms. Armani presented "more relaxed & comfortable . . . excited to make a new fresh start . . . medication experience going well." (Tr. 391). On October 11, 2012, the therapist noted that Ms. Armani "feels isolated/alone often, esp. since moving back to her parents 2 1/2 yrs. ago. Feelings of sadness are there but less frequently since starting medication . . . is looking forward to next Tues. when she meets Monica & works with her on job possibility/training for jobs." (Tr. 392). On October 18, 2012, the therapist discussed coordinating with the job rehabilitation program, and counseled her regarding anger with her ex-boyfriend and communication in future relationships. *Id.* Because Ms. Armani had no ride to her next appointment, there were no additional appointments prior to the ALJ's decision, and none of the appointments pre-dating the decision contained information suggesting that Ms. Armani is disabled due to mental impairments.

The second set of records was attached as an exhibit to Ms. Armani's reply memorandum to this Court, and was not submitted to the Commissioner at all. A reviewing court must find that four prerequisites are met before a case can be remanded to the Commissioner on the basis of new evidence submitted first to the Court: "(1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court." *See Blair ex rel. J.D.S. v. Astrue*, Civil No. 1-10-cv-1476-RMG-JDA, 2012 WL 1016633, at *4 (D.S.C. Feb. 29, 2012) (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)); 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (superseded by amendment to statute, 42 U.S.C. § 405(g), as recognized in *Wilkins v. Sec'y, Dep't of Health & Human Servs.,* 925 F.2d 769, 774 (4th Cir. 1991)). The records submitted to this Court consist of the same therapy records submitted to the AC, but include additional records showing that Ms. Armani continued to be treated regularly by her therapists and mental health providers from 2012 through early 2015. The vast majority of the treatment notes relate to a time post-dating the ALJ's opinion. Thus, the first prerequisite has not been met, and a sentence six remand would be inappropriate.

The records submitted make clear that, despite diligent efforts, Ms. Armani is not having success obtaining substantial gainful employment. While this situation is highly unfortunate, the inquiry into whether a claimant can be successful in seeking work is not a relevant factor in determining whether or not a claimant is disabled. As the Fourth Circuit explained in *Pass v. Chater,* 65 F.3d 1200, 1205 n. 4 (4th Cir. 1995),

> It should be noted that even at step five of the inquiry, the regulations make irrelevant the claimant's actual ability to obtain work. While at step five, the Secretary must show that work exists in the national economy which the claimant could perform, the regulations state that "[i]t does not matter whether—(1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work." 20 C.F.R. § 416.966(a). Commenting on the 1967 amendments to the Social Security Act, we have stated, "Under the amended Act, the courts are not to be concerned about the availability of jobs in the community or even their availability to one with the claimant's impairments, but only with the question of the claimant's ability to engage in gainful activity." *Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971) (per curiam).

While Ms. Armani should be commended for her efforts to seek employment, her inability to be hired for the positions she seeks cannot be considered in an analysis of her residual functional capacity. Her mental health records, even those post-dating the ALJ's opinion, generally show

no more than moderate mental health issues and progress being made with therapy and medication, even in the face of difficult interpersonal and familial relationships.

Second, Ms. Armani posits that SSR 82-59 applies to her case. Again, the Fourth Circuit has made clear that, "SSR 82-59 only applies to '[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source." *Myers v. Comm'r of Soc. Sec. Admin.,* 456 Fed. App'x. 230, 232 (4th Cir. 2011) (citing SSR 82-59, 1982 WL 31384 (Jan. 1, 1982)). Ms. Armani was not found to be under a disability, and the ALJ expressly stated that she did not deny benefits on the basis of failure to follow prescribed treatment. (Tr. 41). Ms. Armani's attempt to surmise what was "on the ALJ's mind at the hearing," Pl. Mot. 17, is not a basis for remand, where the dictates of SSR 82-59 are not met.

Third and finally, Ms. Armani claims that the ALJ failed to include the "moderate limitations" found by a State agency reviewing physician, Dr. Leizer, in her RFC assessment. Pl. Mot. 18-20. While the format of the form has changed, Dr. Leizer's findings of "moderate restrictions" are analogous to what was formerly Section I of the Mental Residual Functional Capacity Assessment. *See* Program Operations Manual Sys. DI 24510.060B (Mental Residual Functional Capacity Assessment), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."). Because the categories such as "moderate" do not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of those limitations. *See, e.g., Andrews v. Astrue*, Civil No. SKG-09-3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so"). Moreover, the ALJ adequately addressed the limitations found in Dr. Leizer's narrative explanation and his residual functional capacity assessment. Dr. Leizer noted that Ms. Armani "is likely to have moderate difficulty with complex or detailed instructions, concentration, task persistence, work relationships, working with the public, and adapting to new tasks." (Tr. 120). Dr. Leizer further noted that Ms. Armani's limitations "do not prevent the claimant from engaging in simple, repetitive, competitive unskilled, nonstressful tasks at SGA levels which do not require contact with the public or significant collaboration with co-workers." *Id.* The ALJ's RFC assessment closely tracks Dr. Leizer's findings, limiting Ms. Armani to simple and repetitive work with no independent planning, no goal-setting, only occasional changes in work setting, and only occasional interaction with coworkers. (Tr. 39). Thus, I find no error in the ALJ's evaluation of

*Christine Armani v. Commissioner, Social Security Administration*
Civil No. JMC-14-976
March 11, 2015
Page 5

Dr. Leizer's suggested limitations, and I find that the ALJ properly relied on the VE's testimony.[2]

  For the reasons set forth herein, Ms. Armani's Motion for Summary Judgment (ECF No. 18) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED. The clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

           Sincerely yours,

           /s/

           J. Mark Coulson
           United States Magistrate Judge

---

[2] Ms. Armani also suggests that a slight difference in the way the RFC assessment was presented to the VE undermines the VE's testimony. Pl. Reply 11 (noting that the ALJ asked the VE for jobs with "no required direct interaction with the public" instead of "no required interaction with the public."). There is no evidence that the VE provided jobs requiring indirect contact with the public, or that the purely semantic difference could have resulted in any confusion on the part of the VE. Accordingly, remand on that basis is unwarranted. Finally, while the VE testified that certain limitations impacting an employee 15% of the time would preclude employment, there is no reason to assume that Dr. Leizer equated "moderate limitation" with 15% of the time.